**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

WALLACE DEEN-MITCHELL,          :

                    Petitioner    :     **CIVIL ACTION NO. 1:10-2238**

    v.                            :           **(CONNER, D.J.)**
                                              **(MANNION, M.J.)**
BRIAN A. BLEDSOE,               :
Warden,
                                  :
                    Respondent
                                  :

## REPORT AND RECOMMENDATION[1]

On October 29, 2010, the petitioner, an inmate incarcerated at the
United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg")
filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.
§2241. (Doc. No. 1).  The petitioner alleges misconduct by Bureau of Prisons
("BOP") staff members and claims that his Due Process rights under the
United States Constitution were violated in the course of prison disciplinary
actions taken against him between December 22, 2009 and October 25,
2010. (*Id.*)

A response to the petition, along with supporting exhibits, were filed by

---

[1] For the convenience of the reader of this document in electronic
format, hyperlinks to the court's record and to authority cited have been
inserted. No endorsement of any provider of electronic resources is intended
by the court's practice of using hyperlinks.

respondent on January 10, 2011. (Doc. No. 13). The petitioner filed a traverse and exhibits on May 17, 2011. (Doc. Nos. 44 and 45). The petitioner also filed supplemental exhibits on May 24, 2011. (Doc. No. 46). With leave of court, the respondent filed a supplemental response to the petition with supporting exhibits on July 14, 2011. (Doc. No. 60). Petitioner filed a traverse to this supplemental response on July 19, 2011. (Doc. No. 61).

## I.    BACKGROUND

Petitioner filed a petition for Writ of Habeas Corpus based on 16 separate incidents.

### 1. Incident # 1958365

Petitioner alleges that he was charged with incident number 1958365 on December 22, 2009. (Doc. No. 1 at 2). Petitioner alleges that this resulted in a forfeiture of 54 days of good conduct time credit ("GCTC"). (*Id).*

The respondent asserts that petitioner did not lose any GCTC. (Doc. No. 60 at 2-3). The respondent asserts that petitioner lost visiting and commissary privileges for six months, and was sanctioned to 30 days disciplinary segregation. *(Id).*

The BOP incident report[2] (Doc. No. 13-1 at 85-95) for this incident

---

[2]Respondent repeatedly cites to his prior brief, as opposed to the location of the exhibit containing the necessary evidentiary support in the record. As a result, in order for the court to perform a thorough review, the

states that the "sanction or action taken" was "1) 30 days disciplinary segregation (Code 201); 2) six months loss of visiting privileges (Code 201); [and] 3) six months loss of commissary privileges (Code 307). (Doc. No. 13-1 at 89).

### 2. Incident # 2000446

Petitioner alleges that he was charged with incident number 2000446 on April 8, 2010. (Doc. No. 1 at 2). Petitioner alleges that this resulted in a forfeiture of 54 days of GCTC. *(Id).*

The respondent asserts that petitioner did not lose any GCTC. (Doc. No. 60 at 2-3). The respondent asserts that petitioner lost 30 days of commissary privileges. *(Id).*

The BOP chronological disciplinary record (Doc. No. 60-1 at 8) states that petitioner was given 30 days commissary restriction. *(Id).*

### 3. Incident # 2035459

Petitioner alleges that he was charged with incident number 2035459 on July 1, 2010. (Doc. No. 1 at 3). Petitioner alleges that this resulted in the forfeiture of 60 days of statutory good time credit ("SGTC") and 54 days of GCTC. *Id.*

---

court was forced to spend an inordinate amount of time attempting to find the evidentiary support for the incidents. Respondent is reminded in the future, citations should be to the record, not one's brief.

In his petition, petitioner alleges that he was deprived of due process that resulted in the loss of time off his sentence, but he does not allege any facts that explain how he was allegedly deprived of due process. (Doc. No. 1 at 3).

In his first traverse, petitioner wrote, in salient part:

> [An] openly gay officer. . . accused petitioner of making sexual proposals to him. Petitioner denied the charge. The incident report claimed that petitioner was "shacking" [sic] his penis. [] However, because that is not a definable rule violation[,] the DHO self[-]amended it to "shaking" and tried to structure that into the definition of a "sexual proposal." [] Petitioner was never given notice of the new charge. Petitioner requested the video tapes of the incident be preserved and made available as documentary evidence, per 28 C.F.R. § 541315(d) [sic] and 541.17(c) [sic]. . . [T]his was denied for no reason given. Petitioner requested to introduce the handwritten note to petitioner from Officer Jeffrey Schmidt, where Schmidt offers to perform oral sex on the petitioner, and states that he would fabricate an incident report against the petitioner if petitioner refused his advances, and this evidence was denied exhibit [illegible] later seized, Exhibit A, ¶ 7, and no reason given. The DHO, K. Bittenbender was not impartial, and clearly biased, as petitioner was previously involved in a sexual affair with Bittenbender's wife, Molly Cuff, Exhibit A ¶ 8. And Bittenbender admitted before the hearing that he "hated" the petitioner as a result of the affair but refused to recuse himself. Exhibit E. . .

(Doc. No. 44 at 10-11).

Respondent asserts that petitioner failed to exhaust his administrative remedies with respect to this incident before filing his petition. (Doc. No. 60 at 3). Respondent asserts that petitioner appealed his disciplinary proceedings to the Regional Office on September 20, 2010. (Doc. No. 13 at 10). The Regional Office issued a denial on October 20, 2010. (*Id.* at 11). Petitioner appealed to the Central Office on November 8, 2010. (*Id).* The

Central Office response was due December 18, 2010. *(Id).*

The evidentiary support for this incident is a two-page printout from the BOP's SENTRY computer system, an "inmate management system[3]." (Doc. No. 13-1 at 16-18). The printout contains a series of codes and numbers that the court is unable to interpret. Further evidentiary support is found in the declaration of Michael S. Romano, an Attorney Advisor employed by the BOP, who provided the SENTRY reports. (*Id.* at 4-7).  Romano wrote:

> Remedy Number 608247 R-1 pertained to this incident report and was received in the Regional Office on September 20, 2010. It was denied on October 20, 2010. He appealed to the Central/National office (608247 A-1) on November 8, 2010. The response is due on December 18, 2010.  See Attachment C.

(*Id.* at 5).

### 4. Incident # 2035460

Petitioner alleges that he was charged with incident number 2035460 on July 1, 2010. (Doc. No. 1 at 3). Petitioner alleges that this resulted in the forfeiture of 60 days of SGTC and 54 days of GCTC. *Id.*

In his petition, petitioner alleges that he was deprived of due process that resulted in the loss of time off his sentence, but he does not allege any facts that explain how he was allegedly deprived of due process.  (Doc. No. 1 at 3).

 In his first traverse, petitioner wrote, in salient part:

Incident report 2035460, also written by Jeffrey Schmidt, on July

---

[3]http://www.bop.gov/foia/pia.jsp (Last accessed March 20, 2012).

1, 2010, accused petitioner of threatening him <u>via another inmate</u>, and though no such definition of threatening Code 206 exist for this type of case, petitioner was still found guilty.  Petitioner never received advanced notice of the charge within 24 hours. Rather, Lt. M. [illegible] back filed the service information after July 5, 2010, and forwarded it to the petitioner's current facility. Petitioner requested Muhammad Dye as a witness, this was denied and no reason given. Petitioner requested that the video tapes of the incident be preserved and made available as evidence per 28 C.F.R. §§ 541.15(d) [sic] and 541.17(c) [sic]. And this was denied for no reason. Exhibit A, ¶ 4, Exhibit F, pp. (3). And petitioner asked DHO Bittenbender to recuse himself since he self-admitted to hating petitioner due [to] petitioner's previous sexual affair with his wife, Molly Cuff. Exhibit A, ¶ 8. I was denied staff representation, and given a "warden's appointee" that failed to meet with me prior to the hearing or do anything to help prepare my defense. . .

(Doc. No. 44 at 12) (emphasis in original).

Respondent asserts that petitioner failed to exhaust his administrative remedies with respect to this incident before filing his petition. (Doc. No. 60 at 3). Respondent asserts that petitioner appealed his disciplinary proceedings to the Regional Office on September 20, 2010. (Doc. No. 13 at 10). The Regional Office issued a denial on October 20, 2010. (*Id.* at 11). Petitioner appealed to the Central Office on November 8, 2010. (*Id).* The Central Office response was due December 18, 2010. *(Id).*

The evidentiary support for this incident is a two-page printout from the BOP's SENTRY system. (Doc. No. 13-1 at 19-21). The printout contains a series of codes and numbers that the court is unable to interpret. Further evidentiary support is found in the declaration Mr. Romano. (*Id.* at 4-7). Romano wrote:

Remedy Number 608241 R-1 pertained to this incident report and

was received in the Regional Office on September 20, 2010. It was denied on October 20, 2010. He appealed to the Central/National office (608241 A-1) on November 8, 2010. The response is due on December 18, 2010.  See Attachment D.
(*Id.* at 5).

### 5. Incident # 2037461

Petitioner alleges that he was charged with incident number 2037461 on July 6, 2010. (Doc. No. 1 at 3). Petitioner alleges that this resulted in the loss of 60 days of SGTC and 54 days of GCTC. *Id.*

In his petition, petitioner alleges that he was deprived of due process that resulted in the loss of time off his sentence, but he does not allege any facts that explain how he was allegedly deprived of due process.  (Doc. No. 1 at 3).

In his first traverse, petitioner wrote, in salient part:

Respondent admits that incident report 2037461 was a "re-write" of an incident report that was initially written July 6, 2010, and expunged on or about July 11, 2010. (See Resp. Ex. 1, Attach, L., pp. 000104) and Exhibit A, ¶ 10. Petitioner was never given notice or a copy of the re-write. . . The DHO['s actions]. . . constitute[] a denial of the evidence, Exhibit G, pp 2. Petitioner requested the video tapes from the airlift, and transport bus, be preserved and made available as documentary evidence, this was denied and no reason given. Petitioner requested a statement from deputy U.S. Marshall Harris be introduced as evidence and this too was denied without reason. Exhibit G, p 3 and Exhibit A, ¶ 11. I requested Muhammad Dye as a witness, this was denied. I asked DHO K. Bittenbender to recuse himself, as I have previously been involved in a sexual affair with this wife that created a conflict of interest, he refused. I requested staff representation, and the staff representative appointed by the warden refused to help prepare my defense. . .

(Doc. No. 44 at 13-14).

Respondent asserts that petitioner failed to exhaust his administrative

remedies with respect to this incident before filing his petition. (Doc. No. 60 at 3). Respondent asserts that petitioner appealed his disciplinary proceedings to the Regional Office on September 20, 2010. (Doc. No. 13 at 10). The Regional Office issued a denial on October 20, 2010. (*Id.* at 11). Petitioner appealed to the Central Office on November 8, 2010. (*Id*). The Central Office response was due December 18, 2010. *(Id).*

The evidentiary support for this incident is a two-page printout from the BOP's SENTRY system. (Doc. No. 13-1 at 22-24). The printout contains a series of codes and numbers that the court is unable to interpret. Further evidentiary support is found in the declaration of Mr. Romano. (*Id.* at 4-7). Romano wrote:

> Remedy Number 608244 R-1 pertained to this incident report and was received in the Regional Office on September 20, 2010. It was denied on October 20, 2010. He appealed to the Central/National office (608244 A-1) on November 8, 2010. It was rejected because the copy of the regional remedy was not legible. See Attachment E.

(*Id.* at 5).

### 6. Incident # 2038033

Petitioner alleges that he was charged with incident number 2038033 on July 8, 2010. (Doc. No. 1 at 4). Petitioner alleges that this resulted in the loss of 60 days of SGTC and 54 days of GCTC. *Id.*

In his petition, petitioner alleges that he was deprived of due process that resulted in the loss of time off his sentence, but he does not allege any facts that explain how he was allegedly deprived of due process.  (Doc. No.

8

1 at ).

In his first traverse, petitioner wrote, in salient part:

Incident report 2038033 accused the petitioner of threatening an
unknown recipient, and refusing an order to enter a cell and do
battle with an enemy, that prison staff has made bets on the
outcome of. The video tape was amazingly preserved in this
instance, and clearly showed that the petitioner was not even in
cell 216, did in fact refuse to enter the cell, but was never
"threatening," in fact petitioner is clearly seen on the video tape by
the DHO, walking away from the cell smiling. (See Resp. Ex. 1,
attach M, pp 000115). Despite these facts, rather than find
petitioner guilty of the refusing the order, the DHO found petitioner
guilty of the threat, and informed the petitioner that it was
because he hated the petitioner, that it had absolutely nothing to
do with the evidence. Petitioner had requested that DHO K.
Bittenbender recuse himself due to petitioner having previously
been involved in a sexual affair with his wife and Bittenbender
self-admitting that he hated the petitioner for it, he refused. I
objected to M. Houser as a staff representative, as we are in
adversity, and he did not meet with me prior to the hearing or help
me to prepare my defense, and I asked to select a staff
representative pursuant to 28 C.F.R. § 541.15(c) [sic]. And this
was denied. Petitioner requested witness Rose and Kasan
Sanders, this was denied without reason, and no copy of the DHO
reporting provided, Exhibit H. . .

(Doc. No. 44 at 14-15) (emphasis in original).

Respondent asserts that petitioner failed to exhaust his administrative
remedies with respect to this incident before filing his petition. (Doc. No. 60
at 3). Respondent asserts that petitioner appealed his disciplinary
proceedings to the Regional Office on September 20, 2010. (Doc. No. 13 at
10). The Regional Office issued a denial on October 20, 2010. (Id. at 11).
Petitioner appealed to the Central Office on November 8, 2010. (Id.). The
Central Office response was due December 18, 2010. (Id).

The evidentiary support for this incident is a two-page printout from the

9

BOP's SENTRY system. (Doc. No. 13-1 at 25-27). The printout contains a series of codes and numbers that the court is unable to interpret. Further evidentiary support is found in the declaration of Mr. Romano. (*Id.* at 4-7). Romano wrote:

> Remedy Number 608252 R-1 pertained to this incident report and was received in the Regional Office on September 20, 2010. It was denied on October 20, 2010. He appealed to the Central/National office (608241 A-1) on November 8, 2010. It was denied on October [sic][4] 20, 2010. See Attachment F.

(*Id.* at 5).

### 7. Incident # 2039929

Petitioner alleges that he was charged with incident number 2039929 on July 13, 2010. (Doc. No. 1 at 4). Petitioner alleges that this resulted in the loss of 500 days of SGTC and 54 days of GCTC. *Id.*

In his petition, petitioner alleges that he was deprived of due process that resulted in the loss of time off his sentence, but he does not allege any facts that explain how he was allegedly deprived of due process.  (Doc. No. 1 at ).

In his first traverse, petitioner wrote, in salient part:

> []The DHO failed to show any constructive or actual possession, which completely denied due process, and fatal to the guilty

---

[4]It is clear that the October 20th Central/National office denial date is a typographical error.  What is not clear is when the Central/National office denial date actually was. We presume that the date intended was probably the same as the other claims - December 18, 2010. Regardless, as discussed below, we are considering the claim on its merits.  Thus, the typographical error is irrelevant.

> finding is the notation attached to the alleged contraband, signed by reporting officer Hummel and Lt. Thomas Brouse, that <u>all</u> of the items in the evidence photograph, were found in inmate Norton['s] property, <u>not</u> the petitioners. Petitioner attempted to introduce a statement from Norton, the DHO refused this evidence and gave no reason why. Exhibit A, ¶ 12, and Exhibit I. Petitioner requested Bittenbender to recuse himself for the aforementioned reasons. Bittenbender refused. . . Petitioner objected to the staff representative being Marc Houser, as we are in adversity ,and he never met with me prior to the hearing or discussed my defense. Exhibit I. I asked for the video tapes of the property being searched to be preserved and made available as documentary evidence, this was denied and no reason given. Petitioner requested inmate Norton as a witness and this was denied for no reason given.  And the DHO amended the report and never gave Petitioner a copy.

(Doc. No. 44 at 15-17) (emphasis in original).

Respondent asserts that petitioner failed to exhaust his administrative remedies with respect to this incident before filing his petition. (Doc. No. 60 at 3). Respondent asserts that petitioner appealed his disciplinary proceedings to the Regional Office on September 20, 2010. (Doc. No. 13 at 10). The Regional Office issued a denial on October 20, 2010. (*Id.* at 11). Petitioner appealed to the Central Office on November 8, 2010. (*Id).* The Central Office response was due December 18, 2010. *(Id).*

The evidentiary support for this incident is a two-page printout from the BOP's SENTRY system. (Doc. No. 13-1 at 28-30). The printout contains a series of codes and numbers that the court is unable to interpret. Further evidentiary support is found in the declaration of Mr. Romano. (*Id.* at 4-7). Romano wrote:

> Remedy Number 608255 R-1 pertained to this incident report and was received in the Regional Office on September 20, 2010. It

11

was denied on October 20, 2010. He appealed to the
Central/National office (608255 A-1) on November 8, 2010. The
response is due on December 18, 2010.  See Attachment G.

(*Id.* at 6).

### 8. Incident # 2057680

Petitioner alleges that he was charged with incident number 2057680
on August 24, 2010. (Doc. No. 1 at 4). Petitioner alleges that this resulted in
a loss of 54 days of GCTC. *Id.*

The respondent asserts that there is no record of this incident number.
(Doc. No. 13 at 12).

The evidentiary support for this assertion is a 20-page printout from the
BOP's SENTRY system. (Doc. No. 13-1 at 164-184). Although the court has
not been advised on how to interpret the printout; it appears that the printout
purports to be a listing of all of petitioner's disciplinary hearings. Incident
number 2057680 does not appear in the printout. Additionally, further
evidentiary support is found in the declaration of Mr. Romano. (*Id.* at 4-7).
Romano wrote: "[t]here is no record of this incident report and appears to
have been expunged or informally resolved." *(Id.* at 7*).* "See Attachment Q,
SENTRY printout of Plaintiff's Discipline record." *(Id.*)

Petitioner, in his first traverse, states that this incident has been
expunged from the record since the filing of this action. (Doc. No. 44 at 9).

### 9. Incident # 2062053

Petitioner alleges that he was charged with incident number 2062053
on September 3, 2010. (Doc. No. 1 at 4). Petitioner alleges that this resulted

12

in a loss of 54 days of GCTC. *Id.*

The respondent asserts that there is no record of this incident number. (Doc. No. 13 at 12).

The evidentiary support for this assertion is a 20-page printout from the BOP's SENTRY system. (Doc. No. 13-1 at 164-184). As with the incident number immediately preceding this one, although the court has not been advised on how to interpret the printout; it appears that the printout purports to be a listing of all of petitioner's disciplinary hearings. Incident number 2062053 does not appear in the printout. Additionally, further evidentiary support is found in the declaration of Mr. Romano. (*Id.* at 4-7). Romano wrote: "[t]here is no record of this incident report and appears to have been expunged or informally resolved." *(Id.* at 7*).* "See Attachment Q, SENTRY printout of Plaintiff's Discipline record." *(Id.*)

Petitioner, in his first traverse, states that this incident has been expunged from the record since the filing of this action. (Doc. No. 44 at 9).

10. Incident # Code 299

Petitioner alleges that he was charged with incident number Code 299 on October 3, 2010. (Doc. No. 1 at 7). Petitioner alleges that this resulted in the loss of 54 days of GCTC. *Id.* at 8. Petitioner also alleges that the incident report resulted in Lieutenant Heath, Officer Spade, Officer Wert and Supervisory Correctional Systems Specialist Olsheski "refusing to allow petitioner's outgoing mail to leave USP-Lew[isburg] for an indefinite time and

13

these officers pretending to be officers of the United States Postal Service."
*Id.*

The respondent asserts that there is no record of petitioner receiving an incident report on October 3, 2010 for a Code 299 violation. (Doc. No. 13 at 39).

The evidentiary support for this assertion is a 20-page printout from the BOP's SENTRY system. (Doc. No. 13-1 at 164-184). As with the three incident numbers immediately preceding this one, although the court has not been advised on how to interpret the printout; it appears that the printout purports to be a listing of all of petitioner's disciplinary hearings. Incident number Code 299 dated October 3, 2010, does not appear in the printout. Additionally, further evidentiary support is found in the declaration of Mr. Romano. (*Id.* at 4-7). Romano wrote:

> Attached hereto as Attachment Q is a complete SENTRY printout of Petitioner's Discipline record. There is no record of a DHO hearing for an incident report that occurred on October 3, 2010 for a code 299 violation (as alleged in the petition). The BOP does not maintain a record of expunged incident reports or ones that are informally resolved.

(*Id.* at 6).

Petitioner does not provide any evidentiary support for the existence of a "Code 299" on October 3, 2010 in either of his traverses (Doc. Nos. 44 and 61), nor in his exhibits (Doc. Nos. 45 and 46). Petitioner does however, provide evidentiary support for a Code 218 that took place on October 3, 2010, but this is documented as incident number 2074399, the incident in the

paragraph immediately following this one.  (Doc. No. 45 at 31-32).

### 11. Incident # 2074399

Petitioner alleges that he was charged with incident number 2074399 on October 4, 2010. (Doc. No. 1 at 5). Petitioner alleges that this resulted in a loss of 60 days of SGTC and 54 days of GCTC. *Id.*

Evidentiary support is found in the supplementary declaration of Mr. Romano. (Doc. No. 60-1 at 3). Romano wrote: "[a] review of Petitioner's discipline record on the BOP database (SENTRY) reveals: [] Incident Report Number 2074399 was expunged." (*Id.*)

Petitioner, in his first traverse, states that this incident has been expunged from the record since the filing of this action. (Doc. No. 44 at 18.

### 12. Alleged October 4, 2010, physical assault

Petitioner alleges that on October 4, 2010, he was assaulted by another inmate at the direction of Warden Bledsoe, Lieutenant Serba, Officer Gemberling, Officer J. Grove, Officer Spade and Officer Hunsinger. (Doc. No. 1 at 6).

### 13. Alleged sexual assault

Petitioner alleges that on October 5, 2010, he was sexually assaulted by Officer Randall L. Spade. (Doc. No. 1 at 6).

### 14. Incident # 2078323

Petitioner alleges that he was charged with incident number 2078323 on October 15, 2010. (Doc. No. 1 at 5). Petitioner alleges that this resulted in

a loss of 54 days of GCTC. *Id.*

The respondent asserts that petitioner did not lose any GCTC. (Doc. No. 60 at 2-3). The respondent asserts that petitioner lost 90 days of commissary privileges, 90 days of visiting privileges and was sanctioned to 30 days of disciplinary segregation. *(Id* at 3*).*

The BOP chronological disciplinary record (Doc. No. 60-1 at 6) states that petitioner was given 30 days "DS," 90 days of "LP COMM," and 90 days of "LP VISIT." *(Id).* It is apparent that these terms mean that petitioner was sanctioned to 30 days of disciplinary segregation, lost 90 days of commissary privileges and lost 90 days of visiting privileges.

15. Alleged October 15, 2010, incident

Petitioner alleges that on October 15, 2010, Officers Gemberling, Kepner and Malakoski forced "an inmate that petitioner has identified as an enemy into petitioner's cell with the express purpose of causing the wrongful death of the petitioner." (Doc. No. 1 at 7).

16. Incident # Code 314 (/Incident # 2082327)

Petitioner alleges that he was charged with incident number Code 314 on October 25, 2010. (Doc. No. 1 at 5). Petitioner alleges that this resulted in the loss of 54 days of GCTC. *Id.*

After an extensive search of the record, the court was able to find reference to Incident Code 314 in petitioners exhibits, also listed as Incident # 2082327. (Doc. No. 45 at 37-38).

The respondent asserts that petitioner did not lose any GCTC. (Doc. No. 60 at 2-3). Mr. Romano stated in his declaration that "[r]ecords indicate the hearing for I.R. NO. 2082327 was heard by the Unit Discipline Committee (UDC)." (Doc. No. 13-1 at 6). "No good conduct time was taken." (*Id.*) "See Attachment P, SENTRY Inmate Discipline Incident Report History." (*Id.*)

The BOP chronological disciplinary record (Doc. No. 13-1 at 162-163) states that petitioner was sanctioned to 30 days "LP visit." (*Id.* at 163).  This appears to mean the petitioner lost 30 days of visiting privileges.

## II.   DISCUSSION

### 1.  Claims that are not cognizable as habeas corpus claims

It is well settled that federal habeas corpus relief is limited to inquiries into the "legality of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002); *Preiser v. Rodriguez,* 411 U.S. 475 (1973).  Federal habeas relief is unavailable unless the petition attacks the "validity of the continued conviction or the fact or length of the sentence." *Id*. at 542. "Federal habeas corpus relief is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention."" *Bonadonna v. United States*, 446 Fed. Appx. 407, 409 (3d Cir. N.J. 2011) *(quoting Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002)*)*. If the allegation "does not "spell speedier release,"" then it "does not lie at the "'the core of habeas corpus.'"" *Bonadonna*, 446 Fed. Appx. at 409 *(quoting Wilkinson v. Dotson*, 544 U.S. 74, 82, 125 S. Ct. 1242,

161 L. Ed. 2d 253 (2005)) (*quoting* *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973)).

Claim numbers 1, 2, 14 and 16 all resulted in the loss of something other than GCTC. Claim 1 (incident # 1958365) resulted in the loss of visiting and commissary privileges for six months and 30 days of disciplinary segregation. Claim 2 (incident # 2000446) resulted in the loss of 30 days of commissary privileges. Claim 14 (incident # 2078323) resulted in the loss of 90 days of commissary and visiting privileges and 30 days of disciplinary segregation. Finally, claim 16 (Code 314 /incident # 2082327) resulted in the loss of 30 days of visiting privileges. As the deprivation of the right alleged did not impact the length of detention, these claims are not cognizable as habeas claims. Thus, it is recommended that dismissal of these four claims is appropriate.

The parties agree that claim numbers 8 (incident # 2057680), 9 (incident # 2062053) and 11 (incident # 2074399) all were expunged from the petitioner's record. As the deprivation of the right alleged did not impact the length of detention, these claims are not cognizable as habeas claims. Thus, it is recommended that dismissal of these three claims is appropriate.

Claim number 10 ("Code 299) is, in part, a duplicate of claim number 11, thus it is recommended that the dismissal of claim number 10 is appropriate for the same reasons as claim number 11.

Claim number 10 ("Code 299) also alleges interference with petitioner's mail. Claim number 12 alleges a physical assault on October 4, 2010; claim

number 13 alleges a sexual assault on October 5, 2010; and claim number 15 alleges an assault on October 15, 2010. None of these claims impact the fact or length of detention, thus they are not cognizable habeas claims. These four claims would all be more properly classified as conditions of confinement claims that would more appropriately be brought as a *Bivens* action. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

Because the petitioner should not be allowed to elude the filing fee requirements of the Prison Litigation Reform Act, it is recommended that his claims be dismissed without prejudice, as they are not habeas claims, but rather claims relating to the conditions of his confinement that would more appropriately be brought pursuant to *Bivens*.

2. Exhaustion of Administrative Remedies/Due Process

According to precedent established by the Court of Appeals for the Third Circuit, claims raised pursuant to §2241 are subject to an exhaustion requirement. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 759 (3d Cir. 1996) (*holding* "that a prisoner's procedural default of his administrative remedies bars judicial review of his habeas petition unless he can show cause for the default and prejudice attributable thereto"); *Arias v. United States Parole Com.*, 648 F.2d 196, 199 (3d Cir. 1981) (concluding that, in the context of a habeas petition filed under §2241, "the district court should have dismissed appellant's petition on exhaustion grounds"). This mandate "has

developed through decisional law in applying principles of comity and federalism" to claims brought under §2241. *Schandelmeier v. Cunningham,* 819 F.2d 52, 53 (3d Cir. 1986). Exhaustion of administrative remedies is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato,* 98 F.3d at 761-62.

In order for a prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. §542.10 et seq., otherwise, the habeas petition should be dismissed. *Arias v. U.S. Parole Comm'n,* 648 F.2d 196, 199 (3d Cir. 1981) (requiring federal prisoner to exhaust administrative remedies before bringing claim under §2241). Exhaustion is not required, however, if there is no opportunity to obtain adequate redress; if the issue presented only pertains to statutory construction; or if the prisoner makes an affirmative showing of futility. *Gambino v. Morris,* 134 F.3d 156, 171 (3d Cir. 1998); *Schandelmeier,* 819 F.2d at 53; *Bradshaw v. Carlson,* 682 F.2d 1050, 1052 (3d Cir. 1981).

In order to exhaust administrative remedies of a DHO claim, first[5], the inmate must submit a formal, written Administrative Remedy Request to the Regional Director within 20 days of the occurrence that is the underlying basis

---

[5]DHO appeals are an exception to the initial informal resolution process required by 28 C.F.R. 542.13. *See* 28 C.F.R. 542.14(d)(2).

for such a request. 28 C.F.R. 542.14 (d)(2) and 28 C.F.R. 542.15(a). If accepted, the Regional Director's response is due within 30 days. 28 C.F.R. 542.18. Second, if the inmate believes that the BOP Regional Director's response is unsatisfactory, the inmate is entitled to appeal the decision to the General Counsel at the BOP Central Office within 30 days. 28 C.F.R. 542.15(a). "Appeal to the General Counsel is the final administrative appeal." *Id*. If accepted, the General Counsel's response is due within 40 calendar days. 28 C.F.R. 542.18. "If an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

Petitioner filed his petition on October 29, 2010. He did not exhaust his administrative remedies for claim numbers 3 (incident # 2035459), 4 (incident # 2035460), 5 (incident # 2037461), 6 (incident # 2038033) and 7(incident # 2039929) prior to filing his petition.

> A federal prisoner ordinarily must exhaust his administrative remedies before petitioning for a writ of habeas corpus pursuant to §2241. If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court.

*Ridley v. Smith*, 179 Fed. Appx. 109, 111 (3d Cir. Pa. 2006) (unpublished) (internal citations omitted).

Petitioner's administrative remedies were exhausted for claims 3, 4, 5, 6 and 7 on or about December 18, 2010.  Respondent filed his first response

21

to the petition on January 10, 2011 and his second, supplemental response on July 14, 2011. It is now March 2012. While petitioner is admonished for bringing his petition prior to exhausting his administrative remedies, a situation that would normally result in this court recommending dismissal for the failure to exhaust, in this particular circumstance, it would be futile to recommend dismissal for failure to exhaust. The claims are exhausted, there is no action left for either the petitioner or the BOP to take in order to full exhaust his administrative remedies on this claim. Thus, we will use our discretion and, in this one particular circumstance only, we will excuse the faulty exhaustion. Thus, we turn to the merits of the issue on these five claims: was petitioner denied due process at his DHO hearings for these five claims?

The United States Supreme Court has held that prison disciplinary proceedings are not part of a criminal prosecution, and as such, inmates are not entitled to the full panoply of due process rights due a criminal defendant. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In *Wolff* the Court stated that in order to satisfy the minimum requirements of procedural due process, prison disciplinary proceedings must include:

> (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.

See *Rashid v. Yates*, 2005 WL 1277825 *2 (M.D. Pa)(*citing Wolff,* 418 U.S. at 556.

Applying these standards, it is apparent that the due process requirements in this context are minimal, and that they have been met in the petitioner's case.

For claims 3, 4, 5, 6, and 7, although the facts pertaining to each are different, petitioner's arguments[6] are the same relating to the alleged due process violations: 1) DHO Bittenbender was not impartial because he "hates" the petitioner for having an alleged sexual affair with Bittenbender's wife; 2) petitioner was not always given 24 hour advance notice of the charges against him; 3) the witnesses that petitioner desired were not always called and/or the videotape evidence the petitioner desired was not always presented at the hearings; and 4) although petitioner received assistance from an inmate representative, it was not always the representative he requested.

The court reviewed the exhibits cited by the petitioner. Petitioner's Exhibits A, E, G and H (Doc. No. 45 at 2-8, 15-19, 23-27). The exhibits are merely written statement by petitioner setting forth bald assertions of wrongdoing with no evidentiary support to back up his assertions.

_____

[6]The court has only considered the arguments that form a cognizable due process claim.  Although petitioner has alleged other issues, such as staff betting on the outcome of inmate fights or the sexual advances of a staff member, these are not a due process consideration review able in the habeas context, thus were not considered.

The court also reviewed the Disciplinary Officer Hearing Report for claim numbers 3 (incident # 2035459), 4 (incident # 2035460), 5 (incident # 2037461), 6 (incident # 2038033) and 7 (incident # 2039929). (Doc. No. 13-1 at 100-158).

The  Disciplinary Officer Hearing Report for claim number 3 (incident # 2035459) shows that 1) Kevin Bittenbender was the DHO; 2) notice was given to petitioner on July 1, 2010 at 8:15 p.m. and a hearing was held on September 1, 2010 at 9:25 a.m.; 3) petitioner requested the testimony of inmates Chaney and Norton, both of whom did testify at the hearing; and 4) petitioner requested that Ms. Inch be his staff representative, but Ms. Inch refused the request because she felt uncomfortable with the sexual nature of the charges, thus Marc Houser was appointed. (Doc. No. 13-1 at 100-109). We find no due process violations with respect to claim number 3 (incident # 2035459). Although petitioner claims that Bittenbender "hates" him for having an alleged affair with Bittenbender's wife, there is no evidentiary support to back up petitioner's assertion. The record is devoid of evidence of partiality on the part of Bittenbender. Although petitioner alleges an affair with Bittenbender's wife, this is a completely unsupported claim. Petitioner was given two months written notice of the charges. Petitioner requested two inmate witnesses, both of whom testified at the hearing. Although petitioner requested Ms. Inch, she refused and petitioner had the assistance of Marc Houser as his inmate representative. As the Third Circuit stated in an appeal

24

of a denial of a prior § 2241 brought by this same petitioner, inmates do not have the right to request representation by a specific staff member. *Mitchell v. Romine*, 158 Fed. Appx. 367, 369 (3d Cir. 2005) (unpublished). Petitioner was given a copy of the written decision after the hearing. Thus we conclude that there were no due process violations with respect to claim 3 (incident # 2035459).

The Disciplinary Officer Hearing Report for claim 4 (incident # 2035460) shows that 1) Kevin Bittenbender was the DHO; 2) notice was given to petitioner on July 1, 2010 at 8:15 p.m. and a hearing was held on September 1, 2010 at 9:31 a.m.; 3) petitioner requested the testimony of two inmates, whose names were redacted, both of whom did testify at the hearing; and 4) petitioner requested that Ms. Inch be his staff representative, but because of the incident immediately preceding this one, Ms. Inch refused, thus Marc Houser was appointed. (Doc. No. 13-1 at 110-119). We find no due process violations with respect to claim number 4 (incident # 2035460). For the same aforementioned reasons, there is no evidence in the record, nor did petitioner provide any, other than his own unsupported allegations, that Bittenbender is impartial. Petitioner was given two months written notice of the charges. Petitioner requested two inmate witnesses, both of whom testified at the hearing. Petitioner was not denied due process because Ms. Inch did not represent him. *See Mitchell, supra.* Petitioner had the assistance of Marc Houser as his inmate representative. Petitioner was given a copy of the written

decision after the hearing. Thus we conclude that there were no due process violations with respect to claim 4 (incident # 2035460).

The Disciplinary Officer Hearing Report for claim 5 (incident # 2037461) shows that 1) Kevin Bittenbender was the DHO; 2) notice was given to petitioner on July 7, 2010 at 2:40 p.m. and again on August 9, 2010 at 2:40 p.m. and a hearing was held on September 1, 2010 at 9:31 a.m.; 3) petitioner requested the testimony of inmates Norton, Lynch and Hall, all of whom did testify at the hearing; and 4) petitioner did not request a staff representative, thus Marc Houser was appointed. (Doc. No. 13-1 at 120-133). We find no due process violations with respect to claim number 5 (incident # 2037461). For the same aforementioned reasons, there is no evidence in the record, nor did petitioner provide any, other than his own unsupported allegations, that Bittenbender is impartial. Petitioner was provided with more than twenty-four hours written notice of the charges. "[N]othing in the Bureau of Prisons regulations prevents the DHO from changing the offense charge in the Incident Report prior to a disciplinary hearing." *Greer v. Hogston*, 288 Fed. Appx. 797, 799 (3d Cir. 2011) (unpublished). Petitioner requested three inmate witnesses, all of whom testified at the hearing. Petitioner had the assistance of Marc Houser as his inmate representative. Petitioner was given a copy of the written decision after the hearing. Thus we conclude that there were no due process violations with respect to claim 5 (incident # 2037461).

The Disciplinary Officer Hearing Report for claim 6 (incident # 2038033)

shows that 1) Kevin Bittenbender was the DHO; 2) notice was given to petitioner on July 8, 2010 at 4:35 p.m. and a hearing was held on September 1, 2010 at 10:13 a.m.; 3) petitioner requested the videotape be played, and it was and it depicted that the petitioner did commit the offense charged; petitioner also requested inmate Rose testify at the hearing, this request was denied as Rose was a victim of the offense; and 4) petitioner did not request a staff representative, thus Marc Houser was appointed. (Doc. No. 13-1 at 134-146). We find no due process violations with respect to claim number 6 (incident # 2038033). For the same aforementioned reasons, there is no evidence in the record, nor did petitioner provide any, other than his own unsupported allegations, that Bittenbender is impartial. Petitioner was provided with more than twenty-four hours written notice of the charges. Petitioner requested the videotape of the incident and it was played. Petitioner requested a witness testify, but since that inmate was the victim, the request was refused. Petitioner had the assistance of Marc Houser as his inmate representative. Petitioner was given a copy of the written decision after the hearing. Thus we conclude that there were no due process violations with respect to claim 6 (incident # 2038033).

The Disciplinary Officer Hearing Report for claim 7 (incident # 2039929) shows that 1) Kevin Bittenbender was the DHO; 2) notice was given to petitioner on July 13, 2010 at 3:35 p.m. and a hearing was held on September 1, 2010 at 10:16 a.m.; 3) petitioner did not request any witnesses testify on his

behalf; and 4) petitioner did not request a staff representative, thus Marc Houser was appointed. (Doc. No. 13-1 at 147-158). We find no due process violations with respect to claim number 7 (incident # 2039929). For the same aforementioned reasons, there is no evidence in the record, nor did petitioner provide any, other than his own unsupported allegations, that Bittenbender is impartial. Petitioner was provided with more than twenty-four hours written notice of the charges. Petitioner did not request any witnesses. Petitioner had the assistance of Marc Houser as his inmate representative. Petitioner was given a copy of the written decision after the hearing. Thus we conclude that there were no due process violations with respect to claim 7 (incident # 2039929).

### 3. Conclusion

Claims number 1, 2, 14 and 16 did not result in the loss of good conduct time credit, thus are not cognizable habeas claims. It is therefore recommended that they be dismissed without prejudice allowing the petitioner, if he chooses, to bring his claims as a Civil Rights Action.

Claims number 8, 9 and 11 were expunged from the record, and thus are not cognizable habeas claims. It is therefore recommended that they be dismissed without prejudice, allowing the petitioner, if he chooses to bring his claims as a Civil Rights Action.

Claim number 10 is, in part, a duplicate of number 11, thus we recommend that it be dismissed for the same reasons as number 11, namely,

it was expunged from the record, thus not a cognizable habeas claim.

Additionally, claim number 10, along with numbers 12, 13 and 15 are conditions of confinement claims, and not cognizable habeas claims, thus we will recommend that they be dismissed without prejudice allowing the petitioner, if he chooses to bring his claims as a Civil Rights Action.

Adequate due process was given to claim numbers 3, 4,5, 6 and 7, thus we will recommend that they be dismissed.

## III.   RECOMMENDATION

**(1)**   On the basis of the foregoing, it is recommended that the Petition for Habeas Corpus (Doc. No. 1) be **DENIED.**

**(a)** Claim numbers 1, 2, 8, 9, 10, 11, 12, 13, 14, 15 and 16 be **DISMISSED WITHOUT PREJUDICE**.

**(b)** Claim numbers 3, 4, 5, 6 and 7 be **DISMISSED.**

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: March 28, 2012**

O:\shared\REPORTS\2010 Reports\10-2238-01.wpd

29